253 F.2d 347
 102 U.S.App.D.C. 325
 UNITED STATES, Appellant,
v.
Harry A. TOULMIN, Jr., Individually, Harry A. Toulmin, Jr.,
as Trustee of the Estate of Harry A. Toulmin, Sr., Deceased,
Harry A. Toulmin, Jr., as Administrator of the Estate of
Rosamond Toulmin, Deceased, Appellees.
 No. 13704.
United States, Court of Appeals District of Columbia Circuit.
Argued Sept. 19, 1957.
Decided Jan. 23, 1958.
 
 Mr. Bernard Cedarbaum, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub, and Messrs. Oliver Gasch, U.S. Atty., and Melvin Richter, Atty., Dept. of Justice, were on the brief, for appellant.
 Mr. Lewis Carroll, Asst. U.S. Atty., also entered an appearance for appellant.
 Mr. John L. Hamilton, Washington, D.C., with whom Mr. George E. Hamilton, Washington, D.C., was on the brief, for appellees.
 Before BAZELON, WASHINGTON and BASTIAN, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 This is an appeal in a suit for damages by a tenant, based on a provision in a lease prohibiting the subletting or assigning thereof without the landlord's consent, with the further provision that the landlord would not withhold his consent unreasonably. After a full hearing on the merits, the District Court found that the landlord (defendant-appellee Toulmin) did not act unreasonably in declining to consent to the proposed sublease and proposed assignment, and gave judgment for appellees on this point.[1]
 
 
 2
 We have reviewed the record and cannot say that the finding is clearly erroneous. The landlord acted on advice of counsel, who pointed out to him reasonable objections relating to both the proposed sub-lessee-assignee and to the terms of the proposed sub-lease and assignment. Under those terms the insolvent tenant would, until the lease term ended, retain legal title to, and not merely its right to be paid for, certain fixtures installed by the tenant. This is not a case where a landlord has withheld his consent solely because of the insolvency of the tenant, or where the landlord was unreasonably attempting to modify or revoke the original lease terms relating to the fixtures. New contracts were drafted by the tenant and presented for the landlord's approval. We cannot conclude that a reasonable man was obliged to accept them in the circumstances: the uninterrupted use of the fixtures, which the landlord had already partially paid for, was essential to the continued enjoyment of the property under the sub-lease and assignment, and thus to the landlord's receipt of rent. The proposed retention by the then insolvent tenant of complete legal title, instead of its lesser equitable monetary interest, in the fixtures might well have allowed the tenant's creditors to interrupt or terminate that enjoyment and receipt of rent. Nor is there any evidence to support a view that the landlord refused to sub-lease generally. The tenant did not propose any other sub-tenant nor did it offer to alter or omit the objectionable feature in the terms of the proposed contracts.
 
 
 3
 We affirm the District Court's judgment. In view of the disposition made of this issue, it is unnecessary to decide other points raised.
 
 
 4
 Affirmed.
 
 
 5
 BAZELON, Circuit Judge (dissenting).
 
 
 6
 The lease gives the landlord a reasonable veto power over particular prospective subtenants, not the power to prevent subleasing generally.
 
 
 7
 My colleagues do not hold that the tenant's insolvency gives the landlord the power to prevent subleasing generally. To hold that it does would be equivalent to holding that insolvency of the tenant is a breach authorizing the landlord to terminate the lease. So long as the tenant does not default, his insolvency does not affect his tenancy. One can sympathize with a landlord who has leased his property for a long term and at a comparatively low rental, when the tenant's financial position grows shaky and the market value of the lease has increased. He would like both a better tenant and a higher rental. But he has bargained for this tenant and this rental. Unless and until the tenant breaks the lease, the landlord is bound to his bargain. The value of the unexpired portion of the lease, by liquidation through subleasing at a higher rental, may sometimes be the difference between survival and collapse of the tenant's business. In any event, whatever may be the value of the unexpired portion of a nondefaulted lease, it is an asset to which the tenant's creditors are entitled.
 
 
 8
 Nor do I perceive anything else in the circumstances of this case which entitles the landlord to object to subleasing generally. Complications resulting from shared property rights in fixtures seem to me irrelevant. They would grow from the provisions of the lease and should be held to have been within the contemplation of the parties when they bargained for a right to sublease.
 
 
 9
 Reasonable objection to the particular subtenant proposed would, of course, support the landlord's refusal to consent to the sublease. But, whatever advice the landlord may have had from his counsel as to the character of the proposed subtenant, the only objection he expressed to the tenant-- that the proposed sublease would leave the insolvent tenant as the owner of the fixtures, as it was under the original lease-- related to subleasing generally and not to the proposed subtenant. Such objections, in my opinion, are not a reasonable basis for withholding consent to a sublease. I would therefore reverse the District Court's judgment.
 
 
 
 [1]
 After the suit was filed the tenant-- the original plaintiff-- assigned its claim to the United States, which was duly substituted as the party plaintiff and is the appellant in this court